```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  6/1/16
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STACEY BLAND, in her capacity as the
Parent and Legal Guardian of "A.C.," a minor,

                          Plaintiff,

            -against-

THE CITY OF NEW YORK;
NEW YORK CITY POLICE DEPARTMENT
("NYPD") OFFICER RAMIREZ,
Shield No. 1947; NYPD OFFICER DUFFY
Shield No. 27097,

                          Defendants.

14 Civ. 5398 (AT)(DCF)

**MEMORANDUM
AND ORDER**

ANALISA TORRES, District Judge:

Plaintiff Stacey Bland, in her capacity as the parent and legal guardian of infant plaintiff A.C., filed this suit against the City of New York and individual police officers, alleging that A.C.'s civil rights were violated when she was assaulted and falsely arrested by the defendant officers. The parties agreed to settle the action and before the Court is Bland's motion to approve the proposed infant compromise order. ECF No. 26. For the reasons stated below, Bland's motion is GRANTED.

## BACKGROUND

On July 17, 2014, Bland filed this action on behalf of her daughter, A.C., against the City of New York and NYPD Officers Nerys Ramirez and Michael Duffy, alleging violations of A.C.'s constitutional rights under 42 U.S.C. §§ 1983 and 1988, as well as violations of New York state law. ECF No. 1; Infant Compromise Order at 1.

In the amended complaint, Bland alleges that, on July 18, 2013, A.C., then 14 years old, was walking home to her apartment in Manhattan when Ramirez and Duffy ordered her to stop. Am. Compl. ¶¶ 15-19, ECF No. 8. Duffy grabbed A.C.'s arm and threw her onto the side of a parked car. *Id.* ¶ 19. Ramirez then grabbed her right shoulder, forcing her to the

ground. *Id.* ¶ 20. Once she was on the ground, Duffy kicked her on her lower back. *Id.* ¶ 21.

Ramirez grabbed her hair and slapped her twice. *Id.* ¶ 22. Duffy handcuffed her behind her

back, and Ramirez picked her up off of the ground by her hair. *Id.* ¶¶ 23-24. A.C. was then

transported to the 28th Precinct, where she was held in custody until approximately 4:30 a.m.

on July 19. *Id.* ¶ 25. Defendants falsely charged her with assault, based on her alleged

participation in an incident that had occurred earlier near the site of her arrest. *Id.* ¶¶ 26-27.

Upon release, A.C. sought medical treatment for pain in her neck and back. *Id.* ¶ 28.

She also had pain in her wrists caused by the excessively tight handcuffs. *Id.* The charges

against A.C. were ultimately dropped. *Id.* ¶¶ 29-31.

On or about July 31, 2013, Bland retained Robert J. Boyle to represent A.C. Boyle

Decl. ¶ 8, ECF No. 27. The retainer agreement provided that Boyle would receive a

contingency fee of one-third of the value of any net recovery, whether by settlement or

otherwise, after deduction of costs. *Id.* Boyle's law firm expended $550.00 in costs in this

action, consisting of the $400.00 fee to purchase an index number, and a $150.00 process

server fee. *Id.* ¶ 12. On February 11, 2016, the parties informed the Court that they had

agreed to settle the matter. ECF No. 21. The proposed infant compromise order provides for

a total award of $20,000 in settlement of A.C.'s claims in this action, out of which $5,000 will

be distributed to Boyle in full payment for his fees and costs.[1] Infant Compromise Order at 1-

2. The balance of $15,000 will be held in a bank account in Bland's name in trust for A.C.'s

sole use and benefit until A.C. reaches her 18th birthday. *Id.* at 2-3.

---

[1] Boyle notes that the terms of his retainer agreement with Bland were modified as part of the settlement process. Boyle agreed to accept one-quarter of the gross settlement amount, rather than one-third of the net recovery, in full satisfaction of his fees and costs. Boyle Decl. ¶ 13.

**DISCUSSION**

Courts in this district must review any proposed settlement of an action by or on behalf of an infant plaintiff. Local Civ. R. 83.2(a). The Court must ensure that its review "conform[s], as nearly as may be, to the New York State statutes and rules." *Id.* 83.2(a)(1). "[R]egardless of whether the federal court strictly adheres to state procedures," however, the Court must determine "whether: (1) the proposed settlement is in the infant's best interests; and (2) the proposed attorney's fees and costs are reasonable." *D.J. ex rel. Roberts v. City of New York*, No. 11 Civ. 5458, 2012 WL 5431034, at *2 (S.D.N.Y. Oct. 16, 2012) (citing Local Civ. R. 83.2(a); N.Y. Jud. Law § 474; N.Y. C.P.L.R. §§ 1205–08), *report and recommendation adopted*, 2012 WL 5429521 (S.D.N.Y. Nov. 7, 2012).

   A. Fairness of the Total Settlement Award

      1. Legal Standard

There is no "bright-line test" for determining whether a proposed settlement is in the infant's best interest. *D.J. ex rel. Roberts*, 2012 WL 5431034, at *3 (citing *Newman v. Stein*, 464 F.2d 689, 691-92 (2d Cir. 1972) (explaining "delica[cy]" of court's multifactorial analysis as to whether settlement is appropriate)). Rather, the Court must assess whether the proposed settlement is "fair, reasonable, and adequate by comparing the terms of the compromise with the likely rewards of litigation." *Everett v. Bazilme*, No. 06 Civ. 269, 2007 WL 1876591, at *2 (E.D.N.Y. June 28, 2007) (internal quotation marks omitted) (quoting *Neilson v. Colgate-Palmolive Co.*, 199 F.3d 642, 654 (2d Cir. 1999)). There is a strong presumption that a settlement is fair and reasonable where "(i) the settlement is not collusive but was reached after arm's length negotiation; (ii) the proponents have counsel experienced in similar cases; [and] (iii) there has been sufficient discovery to enable counsel to act intelligently." *Orlandi ex rel.*

3

*Colon v. Navistar Leasing Co.*, No. 09 Civ. 4855, 2011 WL 3874870, at *2 (S.D.N.Y. Sept. 2, 2011) (quoting *Ross v. A.H. Robins Co., Inc.*, 700 F. Supp. 682, 683 (S.D.N.Y. 1988)). Other factors to consider include "the complexity, expense, and likely duration of litigation . . . [and] the risks of establishing both liability and damages." *D.J. ex rel. Roberts*, 2012 WL 5431034, at *3 (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)). Finally, courts give "significant deference" to a guardian's view that the settlement reached is fair and reasonable to the infant plaintiff. *Orlandi ex rel. Colon*, 2011 WL 3874870, at *2; *see also Stahl v. Rhee*, 643 N.Y.S.2d 148, 153 (N.Y. App. Div. 1996) (noting that "[i]n a case where reasonable minds may legitimately differ, the judgment of the infant's natural guardian should prevail").

2. Application

The Court finds that the proposed settlement is fair, reasonable, and in A.C.'s best interests. First, there is no evidence of collusion in this case. Boyle represents that (1) the settlement was reached after discussions and negotiations between Plaintiff's counsel and Defendants' counsel, Boyle Decl. ¶¶ 5, 9; (2) he has not represented any other person asserting a claim arising from the incident that is the subject of this lawsuit; and (3) he has not become concerned in the settlement at the insistence of a party or person opposing or with interests adverse to A.C., and has not received any compensation from any such party, Boyle Suppl. Decl. ¶¶ 8-9, ECF No. 29. *See* N.Y. C.P.L.R. § 1208(b) (requiring that such affirmations be included in an infant's attorney's submission in support of a proposed infant compromise order).

Second, there is no question that Plaintiff's counsel has substantial experience with civil rights matters. Boyle has been practicing civil rights law since the early 1980's. *See Wahad v. Coughlin*, 870 F. Supp. 506, 507 (S.D.N.Y. 1994) (noting that, by 1994, Boyle, "who has []

4

specialized in civil rights litigation as well as criminal defense," had been practicing for 13 years). Some of his notable representations include Sheik Mohammed Ali Hassan al-Moayad, whose terrorism conviction the Second Circuit overturned, *see* Benjamin Weiser, *Appeals Court Overturns 2 Terrorism Convictions*, N.Y. Times, Oct. 2, 2008, http://www.nytimes.com/2008/ 10/03/nyregion/03cleric.html; Dhoruba al-Mujahid bin Wahad, whose conviction was reversed in 1990, *see* Alan Feuer, *Defiant Ex-Black Panther Sues Defiant New York Police*, N.Y. Times, Dec. 4, 2000, http://www.nytimes.com/2000/12/04/nyregion/defiant-ex-black-panther-sues-defiant-new-york-police.html; and Mumia Abu-Jamal, whom Boyle is currently representing in the Middle District of Pennsylvania, *see Abu-Jamal v. Kerestes et al.*, No. 15 Civ. 967 (M.D. Pa.); Letter from Robert J. Boyle to the Hon. Analisa Torres (Jan. 8, 2016) ("Boyle Letter"), ECF No. 19. *See also* Amy Goodman & Denis Moynihan, *44 Years a Prisoner: The Case of Eddie Conway*, Democracy Now!, Mar. 6, 2014, http://www.democracynow.org/2014/3/6/44_ years_a_prisoner_the_case (describing case of Marshall "Eddie" Conway, another released prisoner whom Boyle represented for more than 20 years). Particularly relevant here, Boyle has litigated numerous Section 1983 actions. *See, e.g., Bandele v. City of New York*, No. 07 Civ. 3339 (S.D.N.Y. dismissed Sept. 22, 2008); *Jenkins v. Charles*, No. 13 Civ. 3405 (S.D.N.Y. filed May 20, 2013); *Taylor v. City of New York*, No. 05 Civ. 858 (S.D.N.Y. dismissed Aug. 23, 2005); *see also* Boyle Letter (explaining his recent occupation with trial in *Jenkins v. Charles*).

Third, the Court is satisfied that sufficient discovery was conducted to enable an intelligent analysis of the issues and the proposed settlement. Boyle's declarations indicate that he investigated A.C.'s allegations, conducted document discovery, exchanged disclosures with Defendants, and obtained and reviewed A.C.'s medical records. Boyle Decl. ¶¶ 9-10, 15; Boyle Suppl. Decl. ¶ 7; *see also* Letter from Gary Moy to the Hon. Analisa Torres (Nov. 9, 2015), ECF

No. 17 (advising the Court that "the parties have been actively engaged in discovery, including serving and responding to written discovery demands and exchanging the production of documents"); *Jurdine ex rel. Jurdine v. City of New York*, No. 07 Civ. 2915, 2008 WL 974650, at *3 (E.D.N.Y. Apr. 8, 2008) (concluding that an "exchange of written discovery and counsel's investigation into the circumstances surrounding the alleged unlawful arrest and detention were sufficient to enable an intelligent analysis of the issues and the proposed settlement") (adopting report and recommendation).

Fourth, the Court finds that the terms of the compromise are adequate in light of the risks, expenses, and likely rewards of litigation.  The parties propose to settle the matter for $20,000, inclusive of costs and attorney's fees, out of which a net total of $15,000 will be placed in an interest-yielding bank account for the sole use and benefit of A.C.  Infant Compromise Order at 2-3; Boyle Suppl. Decl. ¶ 3.  The Court agrees with Boyle that this sum is reasonable because A.C. "did not sustain significant physical injury . . . other than a bruise and a few days of lower back discomfort," and "was in police custody for about two hours and never had to appear in court."  Boyle Decl. ¶ 10; Boyle Suppl. Decl. ¶ 4.  Further, A.C. "was evaluated by a mental health professional and determined to have suffered no lasting mental or emotional injury."  Boyle Decl. ¶ 10; Boyle Suppl. Decl. ¶ 5; *see Vitucci v. Winthrop Univ. Hosp.*, No. 12 Civ. 4328, 2014 WL 4659274, at *6 (E.D.N.Y. Sept. 17, 2014) (finding proposed settlement reasonable where litigation risks were "substantial" because, among other things, the plaintiff "was not treated for her emotional distress, [] showed no physical manifestations of the injury, and the injury was not permanent") (adopting report and recommendation).  Boyle is also correct that A.C. faced significant litigation risks because the defendant police officers continue to "deny any liability, deny that they engaged in excessive force[,] assert that they had probable cause to arrest

6

[A.C., and] assert that they are protected by the doctrine of qualified immunity." Boyle Decl. ¶ 11. Defendants also contend that the officers' actions were not part of a pattern and practice of the City of New York. *Id.* The Court need not "decide the merits of the case or resolve unsettled legal questions" in evaluating an infant settlement, but does consider the litigation risks and notes that a settlement not only ensures that Plaintiff will receive compensation and avoid the uncertainties of protracted litigation, but will also allow A.C. to avoid the "potential for trauma" such litigation poses for infant plaintiffs. *Orlander v. McKnight*, No. 12 Civ. 4745, 2013 WL 4400537, at *4, 5 (S.D.N.Y. Aug. 15, 2013); *see also C.A. ex rel. Arroyo v. City of New York*, No. 11 Civ. 3831, 2013 WL 764626, at *2 (E.D.N.Y. Feb. 28, 2013) (noting that settling the infant's case would "avoid[] the costs of full discovery and litigation as well as the uncertainty of plaintiff's ability to prevail on her claims and prove her damages").

The Court also notes that other cases alleging more egregious violations have settled for significantly less money. *See, e.g.*, *Baez v. City of New York*, No. 09 Civ. 2635, 2010 WL 1992537, at *1, 3 (E.D.N.Y. Apr. 21, 2010) (finding infant settlement of $15,000 reasonable where the plaintiff alleged that the defendant officers, *inter alia*, tackled and beat him and falsely imprisoned him for four days, and noting that "the limited nature of his physical injuries makes it unlikely that he would recover a significant amount even if he could prove liability on his excessive force claim"), *report and recommendation adopted*, 2010 WL 1991521 (E.D.N.Y. May 17, 2010). Finally, Bland's reasoned acceptance of the proposed settlement merits a degree of deference. *See* Bland Aff., ECF No. 30. These factors, in combination, support the settlement sum.

With regard to the disposition of the settlement proceeds, the infant compromise order specifies that the settlement proceeds allocated to A.C. are to be paid to Bland, as mother and

natural guardian of A.C., and deposited in an account at Chase Bank, located at 350 West 125th Street, New York, New York. Infant Compromise Order at 2. The funds are to be invested in an account yielding the highest rate of interest, and are to be held there for the sole use and benefit of A.C. until she reaches her 18th birthday. *Id.* at 2-3. The Court finds that this arrangement will serve to "best protect the interest of the infant." Local Civ. R. 83.2(a)(3); *see Campbell v. City of New York*, No. 15 Civ. 2088, 2015 WL 7019831, at *4 (S.D.N.Y. Nov. 10, 2015) (approving settlement that included similar provision for investment and maintenance of the infant's funds).

    B.  Reasonableness of the Attorney's Fees

       1.  Legal Standard

Under New York Judiciary Law § 474, whether the amount of attorney's fees requested as part of a proposed infant compromise is appropriate turns on whether it is "suitable compensation for the attorney for his service . . . [on] behalf of the [] infant." *Allstate Ins. Co. v. Williams*, No. 04 Civ. 4575, 2006 WL 2711538, at *4 (E.D.N.Y. Sept. 21, 2006) (quoting *Werner v. Levine*, 276 N.Y.S.2d 269, 271 (N.Y. Sup. Ct. 1967)). "[T]he Court has an independent obligation to scrutinize the appropriateness of counsel's requested compensation, so as to protect the interests of the infant client." *D.J. ex rel. Roberts*, 2012 WL 5431034, at *3 (citing Local Civ. R. 83.2(a)(2)). Accordingly, contingency-fee agreements are to be treated by the Court as "advisory only," *id.*, and the contract between an infant's attorney and legal guardian is only "one of the elements which the judge may take into consideration in fixing reasonable compensation." *White v. DaimlerChrysler Corp.*, 871 N.Y.S.2d 170, 173 (N.Y. App. Div. 2008).

    "The 'starting point' in analyzing whether claimed attorney's fees are appropriate . . . is not [the plaintiff's] fee agreement, but rather 'the lodestar—the product of a reasonable hourly

8

rate and the reasonable number of hours required by the case.'" *D.J. ex rel. Roberts*, 2012 WL 5431034, at *6 (quoting *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)). "In determining a reasonable hourly rate for the lodestar calculation, the Court looks to 'hourly rates prevailing in the district for similar services provided by attorneys with comparable skill and experience.'" *Abdell v. City of New York*, No. 05 Civ. 8453, 2015 WL 898974, at *2 (S.D.N.Y. Mar. 2, 2015) (quoting *Sprint Commc'ns Co. L.P. v. Chong*, No. 13 Civ. 3846, 2014 WL 6611484, at *6 (S.D.N.Y. Nov. 21, 2014)). "Other factors to be considered are: '(1) the time and labor required, the difficulty of the questions involved, and the skill required to handle the problems presented, (2) the attorney's experience, ability, and reputation, (3) the amount involved and the benefit flowing to the ward as a result of the attorney's services, (4) the fees awarded in similar cases, (5) the contingency or certainty of compensation, (6) the results obtained, and (7) the responsibility involved.'" *Orlandi ex rel. Colon*, 2011 WL 3874870, at *4 (quoting *In re Catherine K.*, 803 N.Y.S.2d 193, 194 (N.Y. App. Div. 2005)).

    2. Application

    The settlement provides for an attorney's fee award of $5,000, which constitutes one-quarter of the total settlement award. Based on the customary attorney's fees awarded in this district, particularly given an attorney as experienced as Boyle, the Court finds the fee award of $5,000 reasonable. *See D.L.G. ex rel. Gomez v. United States*, No. 12 Civ. 7526, 2015 WL 6736163, at *9 (S.D.N.Y. Nov. 3, 2015).

    First, contingency awards of one-third of the plaintiff's recovery are common in similar cases in this jurisdiction. *See Orlander*, 2013 WL 4400537, at *8 (noting that one-third contingency fees are "usual and customary" and have been "routinely approved"); *Rodney v. City of New York*, No. 13 Civ. 6179, 2015 WL 1014165, at *6 (E.D.N.Y. Mar. 6, 2015) ("New York

courts have generally approved payments that are one-third contingency arrangements in infant compromises.") (adopting report and recommendation).  The proposed fee award here is not only lower than one-third of Plaintiff's recovery, but it is also lower than the lodestar, calculated by multiplying Boyle's hours worked, *see* Boyle Suppl. Decl. ¶ 7—which the Court finds reasonable—by a reasonable hourly rate.  Boyle attests that he spent 49.8 hours working on this case.  Although Boyle does not state what his hourly rate is, a $400 hourly rate has been held reasonable by courts approving fee awards for experienced attorneys in other civil rights actions in the Southern District.  *See, e.g.*, *Tatum v. City of New York*, No. 06 Civ. 4290, 2010 WL 334975, at *4 (S.D.N.Y. Jan. 28, 2010) (finding hourly rates of $400 and $450 reasonable for "competent and seasoned trial lawyers" even though they were "not experienced in civil rights litigation"); *Greene v. City of New York*, No. 12 Civ. 6427, 2013 WL 5797121, at *4 (S.D.N.Y. Oct. 25, 2013) (finding hourly rate of $375 "on par with rates charged by seasoned civil rights solo practitioners").  Applying an hourly rate of $400 for Boyle, who has been practicing for over 30 years and has, as discussed above, extensive experience in civil rights matters, yields a total of $19,920 for his legal work on this case.  Even applying an hourly rate of $250, the lowest end of the range courts in this district have applied for experienced civil rights attorneys,[2] *see* *DeCurtis v. Upward Bound Int'l, Inc.*, No. 09 Civ. 5378, 2011 WL 4549412, at *8 (S.D.N.Y. Sept. 27, 2011) ("[C]onsistent precedent in the Southern District reveals that rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600, . . . with average awards increasing over time."), Boyle's work would have earned him a total of $12,450 in attorney's fees.  Boyle thus seeks substantially less than his lodestar by even the most

---

[2] The Court notes that this district found that a rate of $300 was reasonable for Boyle more than twenty years ago, in 1994.  *See Wahad*, 870 F. Supp. at 507.

modest measure. *See Johnson v. City of New York*, No. 08 Civ. 3673, 2010 WL 5818290, at *5

(E.D.N.Y. Dec. 13, 2010) (approving attorney's fee request of one-third of the total settlement,

noting that it was "only a portion of the actual fees he accrued" given his hourly rate), *report and

recommendation adopted as modified*, 2011 WL 613373 (E.D.N.Y. Feb. 11, 2011).

Further, it is apparent that Boyle devoted significant time to representing A.C. Boyle

represents that he: (1) met with Bland and A.C. and investigated their allegations, (2) drafted the

summons, complaint and amended complaint, (3) conducted document discovery and exchanged

disclosures with Defendants, (4) performed legal research concerning the merits of the case, (5)

attended mediation, and (6) engaged in settlement discussions. Boyle Decl. ¶ 15; Boyle Suppl.

Decl. ¶ 7. Finally, the Court finds that, for the reasons discussed above, Boyle obtained a

favorable settlement for A.C. The Court therefore concludes that the $5,000 fee award is

"suitable compensation" for Boyle's work on behalf of A.C. *Allstate*, 2006 WL 2711538, at *4.

## CONCLUSION

After reviewing the proposed infant compromise order, as well as the submissions by

Bland and Plaintiff's counsel in support of the settlement, the Court concludes that the

proposed settlement is fair, reasonable, and in the best interests of A.C. The Court also finds

that Boyle's request for $5,000 in attorney's fees and costs is reasonable.

The Court orders that the remaining $15,000 be deposited into an interest-bearing

account at Chase Bank, located at 350 West 125th Street, New York, New York. The account

shall be in the name of Bland and shall be held for the sole use and benefit of A.C. until she

reaches the age of 18, except upon order of the Court. The bank shall, upon A.C.'s demand

and without further court order, pay over to A.C. all monies held in that account when she

reaches age 18.

11

The Court will retain jurisdiction over this matter for the purposes of enforcing the infant compromise order, and hearing and determining applications for the release of funds under the order.

SO ORDERED.

Dated: June 1, 2016
       New York, New York

                                        ANALISA TORRES
                                    United States District Judge

12